STATE OF NORTH CAROLINA v. JAMES ELLIOTT PRICE

No. 174A84

(Filed 2 April 1985)

1. **Witnesses § 1.2— ten-year-old rape victim—competent to testify**

  The trial court did not abuse its discretion by permitting a ten-year-old kidnapping and rape victim to testify where the court conducted a *voir dire* during which the witness was thoroughly questioned by both the prosecutor and the defense attorney and after which the court found that the court had observed the demeanor of the witness, that the witness attended religious services on a regular basis and believed that it would be a sin if she did not tell the truth, knew the difference between truth and falsehood, intended to tell the truth, and understood her oath.

2. **Rape and Allied Offenses § 10— testimony not linked to issues in case—properly excluded**

  In a prosecution for the kidnapping and rape of a ten-year-old third grader in which defendant claimed that the victim could give detailed descriptions of his house and car only because she was coached by her mother and great-aunt, the trial court properly excluded testimony that two women had been seen sitting in a car outside defendant's house, walking around the side of defendant's house, looking through a bedroom window, and asking, "Is this where Tootie Price lives?" Defendant did not establish when the women were sitting in the car, there was no evidence of either woman's identity, and no evidence in the record that the victim was coached; the testimony had no logical tendency to prove any fact in issue.

3. **Criminal Law § 102.6— prosecutor's argument on role of judge, prosecutor, and defense attorney — no error**

    The trial court did not err by overruling defendant's objection to the portion of the prosecutor's argument in which he explained the role of the judge, prosecutor, and defense attorney. The prosecutor's remarks did not amount to the expression of a personal opinion as to the veracity of defendant or his witnesses, of defendant's guilt, or of anything else that could be remotely prejudicial to defendant.

4. **Constitutional Law § 34— first-degree kidnapping and rape — no double jeopardy**

    Where defendant was indicted for first-degree kidnapping and first-degree rape, he was not put in jeopardy twice for the same offense where there was testimony of a sexual assault in addition to the rape. G.S. 14-39.

APPEAL by defendant from judgments entered by *Watts, J.*, at the 9 January 1984 session of Superior Court, PASQUOTANK County. Defendant was convicted of rape in the first degree and kidnapping in the first degree. He appeals his conviction and sentence for rape pursuant to N.C.G.S. 7A-27(a). Defendant's motion to bypass the Court of Appeals with respect to his appeal of the conviction and sentence for kidnapping was allowed on 16 August 1984. Heard in the Supreme Court 4 February 1985.

Evidence for the state tended to show that on Thursday, 25 August 1983, defendant abducted the victim,[1] a ten-year-old third-grader, as she crossed a ball field in Elizabeth City. Defendant put her into a car, drove her to a house, took her inside, and raped her. Defendant then performed cunnilingus on the victim, allowed her to go to the bathroom, and then raped her again. He permitted the victim to put her clothes on and then drove her back to the ball field where she was released.

Defendant did not testify but presented witnesses who testified as to alibi.

    *Lacy H. Thornburg, Attorney General, by George W. Lennon, Assistant Attorney General, for the State.*

    *Adam Stein, Appellate Defender, by Malcolm R. Hunter, Jr., First Assistant Appellate Defender, for defendant.*

---

    1. We see no need to expose the victim to further embarrassment and pain by revealing her name here.

MARTIN, Justice.

[1] Defendant's first assignment of error is that the trial court erroneously ruled that the victim was competent to testify. There is no fixed age limit below which a witness is incompetent to testify; rather, the question in each case is whether the witness understands the obligations of the oath and has the capacity to understand and relate facts which will assist the jury in reaching its decision. *E.g., State v. Sills*, 311 N.C. 370, 317 S.E. 2d 379 (1984); *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981). The determination of the competency of a child to testify is a matter resting within the sound discretion of the trial court and its decision is not reversible except for clear abuse of discretion. *Id.*; *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972).

In the present case the trial court conducted a voir dire of the victim during which she was thoroughly questioned by both the prosecutor and defense attorney. At the close of the voir dire the court entered the following order:

This matter came on before the undersigned Judge Presiding over this session of Pasquotank County Superior Court upon the oral motion made by defendant's counsel requesting the Court to conduct a Voir Dire Hearing in the absence of the jury for the purpose of determining the competency of prosecuting witness . . . , and the Court, having conducted such inquiry, makes the following findings of fact:

(1) That the defendant was present and represented by counsel at the time of Voir Dire Hearing in the absence of the trial jury; that the Court had opportunity to see and observe the witness . . . as she testified, and the Court had further opportunity to observe her demeanor upon the witness stand and in the courtroom.

(2) That [the victim] is age ten and is in the third grade in school; that she attends religious services on a regular basis at Saint James Church and sings in the church choir; that she believes in God and believes that God would be mad and it would be a sin against God if she did not tell the truth; that she believes that a failure to tell the truth is a lie and that is bad and that it is wrong to tell a lie; that the witness believes that to tell the truth

means to tell what really happened; that the witness knows the difference between "make-believe" and the truth and knows that "make-believe" is a lie.

(3) That this witness knows the difference between truth and falsehood and intends to tell the truth insofar as she is able in the course of her testimony in this trial, and that she understands the obligation of her oath before God sworn to upon the Bible in the courtroom; that the witness has sufficient intelligence to give evidence which may be of some assistance to the jury in reaching a verdict in this cause.

From the foregoing findings of fact, the Court, in its discretion, determines that this witness is competent to testify in this cause upon the present Pre-Trial Voir Dire Proceeding and also upon the trial of this cause before the jury.

Upon review of the transcript of the voir dire hearing, we hold that the trial court did not abuse its discretion in ruling the witness competent to testify. Defendant's assignment of error is without merit.

[2] Defendant next assigns as error the trial court's exclusion of certain testimony of one of defendant's witnesses. Several of defendant's witnesses presented evidence that defendant was at home with his child and with one Nellie White and her children at the time the offenses occurred. According to defendant, the victim in this case had never been in his house or automobile. Defendant contended that the reason the victim was able to give such detailed and accurate descriptions of the interiors of his automobile and house was because the victim's mother and great-aunt had observed defendant's vehicle and house and thereafter coached the victim as to the description of each. In support of this theory defendant sought to establish at trial that the victim's mother and great-aunt had been near defendant's house on the day of the crimes. Defendant's witness Nellie White testified that sometime during the afternoon of 25 August 1983 she saw a woman sitting in a car in front of defendant's house. During the same afternoon, Ms. White testified, she also saw another woman whom she did not know walk around to the side of defendant's house and apparently look through a bedroom window. Crystal

Moore, a neighbor of defendant's, also testified that at some point during the day of 25 August 1983 she observed a "black lady parked in front . . . of the duplex apartment there where [defendant's] house is—parked in front and sitting there in the car." Defense counsel then asked Ms. Moore:

Q. And what, if anything, did this person do?

A. She called me over to her and she said "Is this where Tootie Price lives?"

The state thereupon objected and the trial court sustained the objection and motion to strike. Defendant now argues that the trial court erroneously excluded this testimony on grounds that it was hearsay. Defendant contends that the testimony was not hearsay as it was offered only to prove that the woman in the car had made a statement to the witness. *See State v. Craven*, 312 N.C. 580, 324 S.E. 2d 599 (1985) (hearsay). Therefore, the testimony should have been permitted.

When a general, as opposed to specific, objection is sustained, no error is committed if any purpose exists for which the evidence would be inadmissible. *See Freeman v. Ponder*, 234 N.C. 294, 67 S.E. 2d 292 (1951). In the instant case, regardless of whether the judge excluded the proffered testimony on hearsay grounds, we hold that his rulings were not erroneous, as the testimony had no logical tendency to prove any fact in issue. *See* 1 Brandis on North Carolina Evidence § 77 (1982). Defendant established only that Ms. Moore saw a woman in an automobile at some unspecified time during the day of the crimes. The record is silent as to whether this was before or after the crimes were committed. Further, defendant failed to produce any evidence of the woman's identity. For all the trial court knew, this woman may have been an out-of-town relative coming to visit "Tootie Price." Moreover, there is no evidence in the record that the woman or anyone else coached the prosecuting witness with respect to descriptions of defendant's automobile and dwelling. There is simply nothing linking the woman's presence in front of the defendant's house to the issues involved in defendant's trial, and the trial court properly sustained the state's objection because the testimony was not relevant. *Cf.* N.C. Gen. Stat. § 8C-1, Rule 402 (Supp. 1983); *State v. Adkins*, 304 N.C. 582, 284 S.E. 2d 296 (1981).

**[3]** Defendant's third assignment of error is that the prosecutor's closing arguments exceeded the bounds of propriety. Generally, a prosecutor is prohibited from expressing a personal opinion as to the veracity of a witness. *E.g., State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978); *State v. Miller*, 271 N.C. 646, 157 S.E. 2d 335 (1967). During closing argument the state explained to the jury the role of the judge, prosecutor, and defense attorney:

> Now, as I said earlier, Judge Watts will tell you about the law. That's his job. He's kind of like a referee and when he tells you what the law is of this case, that is the law, and what he says is the law of this case. He'll also summarize the facts. He'll tell you to remember the evidence as you recall it, but he'll summarize just so much as to help him make you understand and explain what the law is. As I said, the State's duty — the Prosecutor's job is to prove the case by the available evidence that we have — the available and competent and admissible evidence that we have. It's our responsibility to give — bring it into court and present it to you and prove that the guilty people are guilty. That's our job. The defense attorney has the responsibility of defending his client. It's his solemn duty to defend this man whether he's guilty or not, and his responsibility —

At this point defendant interposed an objection which was overruled by the trial court. Defendant now argues that the prosecutor's statements amounted to an expression of his opinion that the state charges only guilty people with crimes and that the jury should affirm the prosecutor's predetermination of the defendant's guilt by finding that "the guilty people are guilty." *See generally* Annot., 88 A.L.R. 3d 449 (1978). We disagree. The prosecutor's remarks do not amount to the expression of a personal opinion as to the veracity of defendant or his witnesses, of defendant's guilt, or of anything else that could be remotely prejudicial to defendant. Nor did they undermine the fundamental fairness of the trial and constitute a miscarriage of justice. *Compare United States v. Young*, 53 U.S.L.W. 4159 (U.S. Feb. 20, 1985). The trial court properly overruled defendant's objection.

**[4]** Finally, defendant argues that the principles of double jeopardy preclude his conviction of both rape in the first degree and kidnapping in the first degree because proof of the rape was

an essential element of proof of the kidnapping. As the United States Supreme Court stated recently: "[U]nder *In re Nielsen*, 131 U.S. 176, 33 L.Ed. 118, 9 S.Ct. 672 (1889), a person who has been convicted of a crime having several elements included in it may not subsequently be tried for a lesser-included offense—an offense consisting solely of one or more of the elements of the crime for which he has already been convicted." *Illinois v. Vitale*, 447 U.S. 410, 421, 65 L.Ed. 2d 228, 238 (1980). *Cf., e.g., State v. Squire*, 292 N.C. 494, 234 S.E. 2d 563 (1977) (merger under felony-murder rule). N.C.G.S. 14-39 provides in relevant part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restraining or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

In *State v. Jerrett* we held that "the language of G.S. 14-39(b) states essential elements of the offense of first-degree kidnap-

ping." 309 N.C. 239, 261, 307 S.E. 2d 339, 351 (1983). The kidnapping indictment in the present case sufficiently alleges that defendant committed kidnapping in the first degree. In relevant part it states:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did confine, restrain, and remove from one place to another [the victim], a person under the age of 16 years, without the consent of her parent and legal guardian, for the purpose of facilitating the commission of a felony, the crime of rape, and for the purpose of doing serious bodily harm to [the victim], and to terrorize [the victim], and [the victim] was seriously injured and sexually assaulted by the defendant during the course of the kidnapping, against the form of the statute in such case made and provided and against the peace and dignity of the State.

At the close of all of the evidence the trial court instructed the jury as follows with respect to kidnapping:

> I charge that for you to find James Elliott Price guilty of first degree kidnapping, the State of North Carolina must prove five things to you beyond a reasonable doubt, as I have defined that term to you. First, the State must prove that the defendant unlawfully either confined [the victim]—that is, imprisoned [the victim] at any given area such as the house at 204 Pritchard Street here in Elizabeth City or that the defendant unlawfully restrained [the victim]. That is, restricted her freedom of movement by force, or that the defendant unlawfully removed [the victim] from one place to another. Secondly, that [the victim] had not reached her 16th birthday and that her mother did not consent to this confinement or restraint or removal. Thirdly, that the defendant confined or restrained or removed [the victim] for the purpose of facilitating his commission of the felony of rape. Fourthly, that this confinement or restraint or removal was a separate complete act independent of and apart from any rape subsequently or any rape which might have occurred subsequently. And, fifthly, that [the victim] has been sexually assaulted.

Defendant argues that his conviction of rape necessarily constituted the proof of the fifth element: that defendant sexually assaulted the victim. Therefore, because he was convicted of rape, he is being twice put in jeopardy for the same offense by virtue of his conviction of kidnapping in the first degree.

We disagree with defendant. As we stated in *State v. Williams*, 295 N.C. 655, 661, 249 S.E. 2d 709, 714 (1978), a case decided under the predecessor statute to the current N.C.G.S. 14-39, "a 'sexual assault' need not necessarily be a rape." Such is the case here. After testifying, in effect, that the defendant raped her, the victim was then asked:

Q. What did you do then? What happened?

A. I started crying, and then he took his mouth and used it.

THE COURT: I'm sorry. I couldn't hear you . . .

A. He used his mouth.

THE COURT: All right. Go ahead, Mr. Johnson.

Q. And what did he do when he used his mouth? Can you tell us about that?

A. Yes. He put his mouth on my vagina.

Testimony of this sexual assault was sufficient evidence of the fifth element of kidnapping in the first degree, as charged, to take the kidnapping case to the jury. Proof of the rape was not required to satisfy this element of the crime.[2] Therefore, no principle of double jeopardy was violated by the entry of judgments that defendant committed both rape in the first degree and kidnapping in the first degree.

Because of the foregoing analysis disposing of the appeal, we do not find it necessary to further address the double jeopardy issue urged by the defendant.

---

2. Defendant does not contend that a double jeopardy problem arises because of the third element, namely, "that the defendant confined or restrained or removed [the victim] for the purpose of facilitating the commission of the felony of rape." In order for this element to have been established it was necessary only to prove a *purpose* of rape, not the commission of rape itself. *State v. Williams*, 295 N.C. 655, 660, 249 S.E. 2d 709, 714 (1978).

Defendant received a fair trial, free of prejudicial error.

No error.